Portland Railroad Company v. Commissioner.
Portland R.R. Co. v. Commissioner
Docket No. 1624.
United States Tax Court
1944 Tax Ct. Memo LEXIS 322; 3 T.C.M. (CCH) 252; T.C.M. (RIA) 44085; March 22, 1944
*322 William H. Dunham, Esq., 9 Green St., Augusta, Me., for the petitioner. J. T. Haslam, Esq., for the respondent. ARUNDELL
Memorandum Findings of Fact and Opinion This proceeding is for the redetermination of a deficiency in income tax for the year 1936, in the amount of $8,823.53, of which amount $2,017.41 is in controversy. The question involves the right of the petitioner to a loss deduction on account of abandonment of certain street railway tracks by a lessee under a 99-year lease, where by the terms of the lease, the lessee is obligated to return to the petitioner the leased properties as a going concern, in condition not inferior to that existing at the time of the lease. Findings of Fact The petitioner, the Portland Railroad Company, is a corporation organized under the laws of the State of Maine, with principal office at Portland, Maine. The return for the year 1936 was filed with the collector for the district of Maine. Prior to the year 1912 the petitioner operated a street railway system in Portland and environs. Part of the system had been constructed and was owned by the petitioner; the remainder was leased from the petitioner's five wholly-owned subsidiaries. On *323 November 1, 1915 the properties of the subsidiaries were conveyed to the petitioner. On February 1, 1912 the petitioner leased to Cumberland County Power and Light Company (hereinafter called Power Company) all of its property, and all of the property operated by it under lease, for a term of 99 years. By the terms of the lease the Power Company agreed to pay as rental a sum sufficient to pay (1) the interest on all of the petitioner's bonds and coupon notes; (2) the interest on the bonds of subsidiaries; (3) the interest on any bonds or other obligations that might thereafter be issued by the petitioner in accordance with the provisions of the lease; (4) dividends at the rate of five per cent per annum upon the petitioner's outstanding stock. The lessee also agreed to pay all taxes of any description imposed upon the petitioner on its property during the term of the lease and to pay $500 per annum to meet the cost and expense of the petitioner's corporate organization. By the terms of the lease, the Power Company agreed to maintain and operate the railway properties as a going concern, in condition not inferior to that existing at the date of the lease, and to make all necessary *324 repairs, replacements, and renewals to that end. It was further agreed as follows: "At the expiration of this Lease or its earlier termination for any cause, the Power Company agrees to surrender and deliver to the Railroad Company as a going concern, in condition not inferior to that existing at the date of this Lease, all of the estates and properties demised, acquired and held under the provisions of this Lease, and all extensions, enlargements, additions and renewals thereof * * *." Article XIII of the lease, permitting sale or abandonment of property under certain circumstances, follows in full: "The Power Company may sell or dispose of any personal property whenever it shall deem it proper in the ordinary course of business to sell or dispose of the same, subject to any lien or charge that shall then remain or exist against such property, and also may abandon or sell any track, real estate, equipment, franchise, road or other property of the Railroad Company which in the opinion of the Power Company it is inexpedient to retain, provided that the continuity of the line of railroad shall not be broken by any such sale or abandonment, nor the efficiency and value of the demised *325 premises as a system of street railroads be unfavorably affected, and provided any such abandonment or sale shall not be in violation of the provisions of any of said mortgages or in violation of any regulation of any public service commission or any legal obligation of the Railroad Company. And the Power Company may from time to time in its discretion change or rechange the location or character of the whole or any part of any present or future line of railroad demised hereby, or the motive power now used or hereafter used upon any such line, or the roadbed of any such line, subject to the provisions of any of said mortgages and of any such regulation or legal obligation. The proceeds of the sale or exchange of any property of the Railroad Company which shall be sold or exchanged by the Power Company shall be reinvested in extensions, enlargements and additions of and to the demised estates and properties. The Railroad Company agrees to execute upon demand of the Power Company its consent to such sale, disposal, abandonment, or change, and any deeds or conveyances, appropriate to transfer and convey good title, subject to any then existing liens or encumbrances thereon." Extensions, *326 enlargements, additions and replacements were provided for in Article XV, which follows in material part: "The Power Company may from time to time make such extensions, enlargements and additions of and to the demised estates and property, as it may deem for the best interests of the parties hereto, and the Railroad Company agrees that it will take such corporate action in regard to the purchase or construction of such extensions, enlargements and additions as may be required or convenient to accomplish such purchase or construction. The title to such extensions, enlargements and additions shall be taken and vest in the Railroad Company, but the cost thereof shall be advanced and paid by the Power Company and charged by it against the Railroad Company. The Railroad Company covenants and agrees that it will promptly, after written request, repay to the Power Company the actual cash cost of all such extensions, enlargements and additions, * * *." * * * * *
"Whenever old or worn-out equipment or other property, or equipment or other property which in the opinion of the Board of Directors of the Power Company is unsuitable for its purposes, or unnecessary for successful operation, *327 is replaced by new property of greater cost than the replacement cost of the old or worn-out or unsuitable property if new at the time of replacement, such replacement shall not be considered an extension, enlargement or addition except to the extent of the excess of cost of the new over the replacement cost of the old, including the excess, if any, of the cost of constructing, erecting and installing the new over the cost of constructing, erecting or installing the old." * * * * *
"It is the intention and understanding of the parties hereto that there shall be included within the meaning of expenditures for extensions, enlargements and additions as used in this Lease, all expenditures made by the lessee, which, if this Lease had not been made, and such expenditures had been made by the lessor, could properly be charged by it as capital expenditures. The Railroad Company, however, shall not be liable to repay to the Power Company any expenditures made by it to keep and maintain the demised estates and properties in good and workmanlike order and repair, as provided in Article V, nor for replacing old and worn-out property, except as hereinbefore set forth. All lands, structures, *328 improvements, extensions, enlargements and additions, betterments, equipment and renewals added to or made upon the demised estates and properties pursuant to any provisions of this Lease (except extensions, enlargements and additions to said Forest Avenue steam electric plant made by the Power Company as in this Article provided) shall become the property of the Railroad Company when and as acquired and shall be considered as part of the demised estates and properties and be subject to all the terms, conditions and provisions of this Lease, with the same force and effect as if they had been owned by the Railroad Company at the date of this Lease." The petitioner's income after February 1, 1912 was derived almost entirely from rentals actually or constructively received under the foregoing lease. Since February 1, 1912 the petitioner has not been allowed any deductions from its gross income on account of depreciation or obsolescence of its leased properties. The accounting practice of the petitioner with respect to additions, extensions, replacements, and abandonments, has been as follows: An account entitled Cumberland County Power & Light Co. - Construction Account was credited *329 with the cost of all extensions, additions, and enlargements, and the net cost of replacements provided by the lessee and debited with the cost, or if cost was unavailable, with the appraised value of all property retired or abandoned by the lessee. To another account designated Plant and Property was added the cost of additions and extensions, etc., and from it was subtracted the cost or appraised value of the property retired or abandoned. Thus, when property was retired or abandoned the petitioner moved the cost or appraised value of it from the Plant and Property Account, and charged it to the lessee in the Construction Account; when the lessee acquired additional property, the cost of the new property was added to the Plant and Property Account, and credited to the lessee in the Construction Account. Consistently with this method, the Power Company maintained an account designated Portland Railroad Company Account, to which were debited expenditures for additions, extensions, etc., and to which was credited property retired or abandoned at cost or appraised value. In December 1919 a credit balance in favor of the Power Company was substantially satisfied by the issuance of *330 five per cent bonds in the principal amount of $86,000 by the petitioner. Since that time there has bee no further settlement between the two companies. Since June 30, 1932 there has developed a discrepancy in the treatment of abandonments by the two corporations. The petitioner continued the above described procedure, but the Power Company discontinued the Portland Company Account, and has made no ledger record in respect of abandonments except to consider the net salvage value of abandoned property in an account due from the petitioner. In this account the lessee debited the cost of extensions, enlargements, additions, and the net cost of replacements, plus certain miscellaneous charges. Despite this change of attitude with respect to lessee liability for abandonments, the petitioner continued in its accounting to consider the Power Company liable for cost or appraised value of abandoned property until July 1, 1941. At that time the Construction Account was segregated to show separately the liability of the petitioner to the lessee on account of a change-over to gasoline buses. The amount owing to the lessee was transferred to a new account entitled Buses, Garage Charges, and Other *331 Property Provided by Lessee. The balance of the old Construction Account, representing a receivable on account of abandonments, was moved to an account designated Property Abandoned by Lessee, which remained on the asset side of the balance sheet, while the Buses and Garage Account appeared as a liablity. In 1931 gradual abandonment of the street railway lines was commenced. In 1939 the lessee began to replace the trolley lines with gasoline buses, completing the replacement in May 1941. Here involved are two lines abandoned in 1936, Pleasant Avenue and Broadway. The first, Pleasant Avenue, was a short line connecting two main lines. Revenue on the line had been declining, the line was in poor condition and grading operations were contemplated by the state which, in the opinion of the directors of the lessee, would render the cost of repairs unfeasible. On May 25, 1936, pursuant to hearing, the Maine Public Utilities Commission, in view of the declining revenue, poor condition, and impending improvements to the highway, and in view of the pendency of a petition for authority to operate a bus line on Pleasant Avenue, granted permission to discontinue services over that route and *332 to abandon the line. Upon abandonment in that year, the petitioner entered upon its books, in the Construction Account, an amount of $38,375, representing the cost or appraised value of the Pleasant Avenue line, as a charge against the Power Company. That figure was carried over in 1941 to the Property Abandoned Account, and still remains on the petitioner's books. There was no salvage value on this line, inasmuch as the tracks were covered with macadam, and the cost of removal would exceed the salvage proceeds. The Broadway line was a short stretch of track connecting two lines intersecting it in a sparsely populated district. This line was constructed prior to 1913, and acquired by the petitioner from one of its subsidiaries on November 1, 1915. Some time during the year 1936 it was abandoned, and the tracks removed with salvage proceeds amounting to $453.60. The amount of $7,854.00 was charged against the lessee by the petitioner in its Construction Account. This amount was carried over into the Property Abandoned Account in 1941, and still appears there. Neither of the above abandonments, considered as isolated transactions, broke the then continuity of the line of railroad, *333 nor unfavorably affected the efficiency and value of the system as it then existed. Each line was a short connecting link, and the facilities available for rendering service after the abandonments were adequate to handle the service. When the Pleasant Avenue line was abandoned a short curve from the main line was set in to take care of the traffic formerly carried on Pleasant Avenue. Neither of the abandonments was in violation of the provisions of any mortgage or legal obligation of the petitioner, nor of any regulation of any public service commission. The Pleasant Avenue line was built by the petitioner in 1896. The cost of construction, less depreciation to March 1, 1913, is $8,361.61. The reproduction cost of the Broadway line, less depreciation to November 1, 1915, and less salvage recovered upon abandonment is $3,070.40. No court action has ever been taken to determine lessee liability on account of abandoned property. About 1937 the petitioner was advised by counsel that the Power Company was not liable to the petitioner for losses due to obsolescence of the leased properties. Some time prior to 1937 the Power Company had been advised by counsel that it was liable to the *334 petitioner for only the salvage value of property abandoned by it. Beginning approximately in 1930 the Power Company had gradually acquired shares of stock of the petitioner, until in 1941 it held 9,795 of 19,990 shares of the petitioner's outstanding stock or approximately forty-nine per cent, the remainder being held by the public generally, in relatively small amounts. The Power Company and its successor, the Central Maine Power Company, have continued to pay the stipulated rental, irrespective of the abandonments and of the substitution of buses for the street railway system. Opinion ARUNDELL, Judge: The question we are called upon to decide is whether petitioner is entitled to deduct for the year 1936 a loss said to have been suffered by the abandonment of certain tracks which had constituted a part of its street railway system. There is no dispute that the statute grants to a taxpayer a deduction for the loss of business property, whether by abandonment or otherwise, if he is not to be compensated for the loss. Petitioner's railway property has since 1912 been under lease for a period of 99 years and the Commissioner, in denying the deduction, took the view "since under *335 the terms of the lease the lessee is bound to surrender the properties at the end of the lease to the Portland Railroad Company as a going concern, in condition not inferior to that existing at the date of the lease," no loss was in fact suffered. It is, of course, petitioner's position that it will not be compensated for the abandoned property. The answer to the question must be found in the lease agreement and as the respective rights of the parties have never been submitted to the local court for adjudication, no help is at hand from this quarter. The right to abandon any of the railway property is, under the lease, a matter for the lessee to decide and such was the case with the property abandoned in 1936 with which we are here concerned. The abandonment of this property was not an isolated matter, but was a part of a general plan commenced in 1931 and continued through the next decade until all of the lines were disposed of. In 1939 the substitution of buses for street cars was inaugurated and by the time the street railway services had ceased in 1941 buses had completely taken over the transportation service. From 1912 to 1931 there seems to have been no disagreement between *336 the lessor and the lessee as to the proper method of accounting for the abandonment of the railway property. The petitioner charged against the lessee the cost of the abandoned property and credited the lessee with the cost of the new facilities purchased by the latter. This method of bookkeeping was continued in so far as the petitioner was concerned until 1941 and if it correctly represents the rights of the parties under the contract there would be no loss suffered by petitioner, as the duty would rest on the lessee to fully compensate it for the cost of the abandoned property. The lessee, however, appears to have changed its method of bookkeeping in 1931, at which time it took the view that it was only required to account for the salvage value of whatever property of the lessor it abandoned or otherwise disposed of. It is petitioner's position in this proceeding that the two lines abandoned in 1936 were abandoned under the provisions of Article XIII of the lease, which article is quoted at length in our findings of fact. That article states that "The proceeds of the sale or exchange of any property of the Railroad Company which shall be sold or exchanged by the Power Company *337 shall be reinvested in extensions, enlargements and additions of and to the demised estates and properties." This, it is contended, measures the sole liability of the lessor, but as we have already pointed out such was not the construction the parties placed on the contract during the first nineteen years of the lease and in so far as petitioner is concerned it did not adopt such a construction before 1941, if, indeed, its method of bookkeeping can be said to countenance the construction apparently contended for in this proceeding. Moreover, it seems very doubtful to us that the abandonments in 1936 fall within the provisions of Article XIII of the lease. Among several conditions attached to the permission to abandon property were the following: (1) That the abandonment should not break the continuity of the line, and (2) That the abandonment should not unfavorably affect the efficiency and value of the system of street railroads. It was testified that neither of the abandonments broke the continuity or impaired the efficiency and value of the railroad. This is probably true if consideration is restricted to each abandonment as a separate transaction, but, as we have already pointed *338 out, abandonments were taking place as a part of a general plan of substituting more modern facilities of transportation for the street cars and tracks and thus by 1941 it was no longer a street railway but a bus system. This is evidently not the sort of abandonment contemplated by Article XIII, for it countervails the dominant provision of the lease - the obligation to maintain and return a going street railroad. If it were, then at the termination of the lease, the petitioner would have, instead of a going transportation system, only debts for property added by the lessee. This is so far from a reasonable business transaction that we should hesitate to put such construction upon the lease. The abandonments in question are more readily understandable when viewed as retirements anticipatory to complete replacement. Article XV provides that whenever old, unsuitable, or unnecessary property was to be replaced by new property, the expense was to be borne by the lessee, except to the extent of the excess of the cost of the new over the replacement cost of the old which additional outlay was chargeable to the lessor. This expense was to the lessee a part of the cost of the lease, a necessary *339 factor in assuring the return of a going transportation system to the petitioner. It would seem that this provision is not restricted to replacement in kind, for there is obviously no purpose in replacing in kind equipment unsuitable for the purpose or unnecessary for successful operation. But, the substitution of buses for street cars and tracks falls directly within this article; the street cars and tracks, due to obsolescence, were no longer suitable for transporting the public and they were replaced by buses. Upon this view no loss has been sustained by the petitioner because it is credited with the replacement cost of the old tracks. The petitioner has relied principally upon ; and . Its reliance upon those cases is, however, predicated upon the premise that it will not be compensated for the abandoned property. As our construction of the lease agreement leads us to a contrary conclusion, the cases *340 are not in point. We conclude that the loss resulting from the abandonment of the tracks is not deductible. Decision will be entered under Rule 50.